[No. 21183-1-II.   Division Two.   May 1, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL J. MILLER, *Appellant*.

*Robert M. Quillian* and *Thomas E. Doyle,* for appellant (appointed counsel for appeal).

*Jeremy L. Randolph, Prosecuting Attorney,* and *J. Andrew Toynbee, Deputy,* for respondent.

SEINFELD, J. — Daniel James Miller appeals his conviction in Lewis County Superior Court of possession of methamphetamine with intent to deliver and possession of marijuana with intent to deliver. RCW 69.50.401(a). Miller contends that the arresting officer lacked a reasonable suspicion necessary to justify a stop-and-frisk search and

that the scope of the search was unlawfully broad. He also contends that the evidence is insufficient to support the convictions. We affirm.

## FACTS

At approximately 3:45 A.M. on August 17, 1994, Officer Michael McCroskey of the Centralia Police Department was on patrol in downtown Centralia in a high crime area when he observed Miller and Tony Hickman arguing. He said that Miller and Hickman were yelling and screaming at each other, that Hickman's back was against a wall, and that Miller's finger was pointing in Hickman's face. McCroskey and Reserve Officer Scott Megeysi approached Miller and Hickman to make sure the argument did not escalate into "something physical."

As the officers approached, Miller attempted to leave and enter a nearby apartment building. Hickman walked away in a different direction. McCroskey, who followed Miller, told Miller to stop, that he needed to speak with him. Miller did not stop. Instead, he attempted to open the locked entrance to the apartment building. McCroskey then told Miller to turn around so that he could see his hands. In response, Miller put his hands in his coat pockets. McCroskey then "assisted" Miller in placing his hands on the wall, and frisked him for weapons.

During the frisk, McCroskey felt what he believed to be a knife on Miller's waist. Because Miller tried to turn around, McCroskey handcuffed him as a safety measure before removing the knife for inspection. A continued patdown produced a tin canister, about three inches by four inches and a half-inch deep. Concerned that the canister might contain a weapon, the officer opened it. Inside there were ten small plastic bindles of suspected methamphetamine and some marijuana. In his search of Miller's person, Mc-

Croskey also found $96 and a notebook containing names and what the officer termed "monetary marks."

## I. Justification to Approach and Subsequently Detain Miller

■ Under the Fourth Amendment and Article 1, Section 7 of the Washington Constitution, warrantless searches and seizures are per se unreasonable. *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). But there are a few "jealously and carefully drawn exceptions" to the warrant requirement that apply where the societal costs of obtaining a warrant outweigh the reasons for prior recourse to a neutral magistrate. *Id.* at 736; *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980); *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991). The burden is on the State to show that the particular search or seizure falls within one of these exceptions. *Williams*, 102 Wn.2d at 736; *Houser*, 95 Wn.2d at 149.

■ ■ In this instance, the State relies primarily upon the *"Terry* stop" exception to the Fourth Amendment warrant requirement. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). This exception allows an officer to stop-and-frisk when: (1) the initial stop is legitimate, (2) a reasonable safety concern exists to justify a protective frisk for weapons, and (3) the scope of the frisk is limited to the protective purpose. *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993) (citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)).

Under the first prong, an officer may briefly stop an individual based upon reasonable suspicion of criminal activity if necessary to maintain the status quo while obtaining more information. *Adams*, 407 U.S. at 146. The *Terry* court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a

person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. In this case, McCroskey's contact of Miller was appropriate; McCroskey was seeking to maintain the status quo while he determined whether or not violence was about to erupt between Miller and Hickman.

Under the second prong, "[a] reasonable safety concern exists, and a protective frisk for weapons is justified, when an officer can point to 'specific and articulable facts' which create an objectively reasonable belief that a suspect is 'armed and presently dangerous.' " *Collins*, 121 Wn.2d at 173 (citing *Terry*, 392 U.S. at 21-24). The Washington Supreme Court has stated that " '[c]ourts are reluctant to substitute their judgment for that of police officers in the field. "A founded suspicion is all that is necessary, some basis from which the court can determine that the [frisk] was not arbitrary or harassing." ' " *Id*. at 173 (emphasis omitted) (quoting *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966))). Here, the officer's frisk was prudent. McCroskey had a founded, reasonable suspicion that Miller was armed and dangerous. McCroskey's suspicion was based upon Miller's attempt to flee the area, his refusal to turn around and to remove his hands from his pockets, the time of night, and the high crime area in which the incident was occurring.

The third prong of the test limits the scope of the frisk to that necessary to preserve officer safety. *Collins*, 121 Wn.2d at 173. The search must be limited to a frisk for weapons. If an officer feels an object that may be a weapon, he or she may withdraw it for examination. *State v. Hudson*, 124 Wn.2d 107, 113, 874 P.2d 160 (1994). Here, the frisk was a valid protective search as McCroskey, already suspicious of Miller for the reasons described above, had cause to fear for his safety.

Further, McCroskey testified that he has seen, in training, containers similar to that on Miller's person capable of

holding a .22 caliber Derringer pistol. This allowed Mc-Croskey to examine the container's contents under the auspices of a protective search. *Collins*, 121 Wn.2d at 171. Based upon these considerations, we conclude McCroskey did not exceed the proper scope of a *Terry* stop when he opened the canister to check for a weapon. *See Collins*, 121 Wn.2d at 173; *Belieu*, 112 Wn.2d at 601-02.

Thus, the drugs discovered on Miller were the fruits of a legal stop-and-frisk. The trial court did not err when it denied Miller's motion to suppress the knife and the canister as evidence.

## II. Sufficiency of the Evidence

The standards by which we review challenges to the sufficiency of the evidence are set forth in *State v. Camarillo*, 115 Wn.2d 60, 794 P.2d 850 (1990); *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980); *State v. Delmarter*, 94 Wn.2d 634, 618 P.2d 99 (1980). We do not need to repeat them here.

Under RCW 69.50.401(a), it is unlawful for any person to possess a controlled substance with intent to deliver. It is clear in this case that Miller had possession of marijuana and methamphetamine. He argues, however, that the evidence was insufficient to prove his intent to deal the substances.

Viewing the evidence in the light most favorable to the State, and drawing all reasonable inferences therefrom, there is sufficient evidence to prove beyond a reasonable doubt that Miller had intent to deliver the drugs. McCroskey found drugs packaged in amounts appropriate for individual use, approximately 25 empty plastic bindles, a list with names, numbers and "monetary marks" on it, $96, and a knife. When considered along with McCroskey's testimony on the significance of such items, this evidence is sufficient to establish, beyond a reasonable doubt, Miller's intent to deliver drugs.

Thus, the trial court did not err in convicting Miller of possession of marijuana and methamphetamine with intent to distribute.

187

We affirm.

HOUGHTON, C.J., and HUNT, J., concur.

Review denied at 136 Wn.2d 1016 (1998).