10 P.3d 760

STATE of Idaho, Plaintiff–Respondent,

v.

Tracy L. HUGHES, Defendant–Appellant.

No. 25548.

Court of Appeals of Idaho.

Sept. 8, 2000.

Ronaldo A. Coulter, State Appellate Public Defender; Molly J. Huskey, Deputy Appellate Public Defender, and Charles I. Wadams, Legal Intern, Boise, for appellant. Charles I. Wadams argued.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

PERRY, Chief Judge.

Tracy L. Hughes appeals from his judgment of conviction for possession of a controlled substance. I.C. § 37–2732(c)(1). Hughes challenges the district court's denial of his motion to suppress evidence. We affirm.

## I.

## BACKGROUND

On February 22, 1998, at approximately 2:00 a.m., a Kootenai County sheriff's officer observed a pickup with a partially obstructed license plate. The officer conducted a traffic stop and made contact with the driver, who identified himself as Hughes. The officer explained to Hughes the reason for the stop and asked Hughes for his driver's license, registration, and proof of insurance. The pickup Hughes was driving had extra large tires, which placed the vehicle's window approximately at the height of the officer's collarbone.

During this initial contact, the officer observed that Hughes was acting extremely nervous and fidgety. Hughes was moving his hands about the interior of the vehicle,

was reaching toward the bottom of the door, and was twisting back around the other way. Due to the height of Hughes' vehicle, the officer was unable to see inside the passenger compartment below Hughes' shoulders. The officer asked Hughes several times to stop moving, but Hughes failed to comply with the officer's requests. At this point, the officer requested that Hughes exit the vehicle. After removing Hughes from the vehicle, the officer frisked Hughes for weapons. During this frisk, the officer felt a round cylindrical object in Hughes' left front pants pocket. The officer did not remove the object, but instead continued the frisk. Hughes pushed the officer away, reached into his pocket, removed the cylindrical object, and threw it back over his head.

During a search of the area, a small glass jar with a metal lid was recovered. A field test revealed the contents of the jar to be amphetamine. Hughes was arrested and charged with possession of a controlled substance. Hughes unsuccessfully moved for the suppression of the evidence seized. Thereafter, Hughes pled guilty to possession of a controlled substance, reserving his right to appeal the district court's denial of his suppression motion. Hughes appeals.

## II.

### ANALYSIS

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

■ Hughes argues that the denial of his motion to suppress evidence should be overturned on appeal due to the illegality of the officer's frisk for weapons. The reasonableness of such an investigative frisk is a question of law. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Burgess,* 104 Idaho 559, 561, 661 P.2d 344, 346 (Ct.App.1983). While the trial court's conclusions should not be lightly disregarded,

it is this Court's responsibility to measure the facts as found by the district court against the constitutional standard of reasonableness. *Burgess,* 104 Idaho at 561, 661 P.2d at 346. A frisk for weapons is permissible if the officer has a reasonable belief that the subject of the frisk poses a danger and has immediate control of a weapon. *State v. Fleenor,* 133 Idaho 552, 555, 989 P.2d 784, 787 (Ct.App.1999). In our analysis of a frisk, we look to the facts known to the officers on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Id.*

■ If an officer can point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant a frisk for weapons, then such a frisk will not violate the Fourth Amendment. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906 . In *Terry,* the United States Supreme Court held that when analyzing such a frisk, a court must decide "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. As explained by the *Terry* Court, where a police officer reasonably concludes, based on his or her observations, that people with whom the officer is dealing may be armed and presently dangerous, and where nothing in the initial stages of the encounter serve to dispel the officer's reasonable fear for his or her or other's safety, the officer is entitled to conduct a carefully limited search of the outer clothing in an attempt to discover weapons which might be used to assault the officer. *Id.* at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911–12. *See also State v. Babb,* 133 Idaho 890, 994 P.2d 633 (Ct.App.2000); *State v. Frank,* 133 Idaho 364, 986 P.2d 1030 (Ct.App. 1999).

Initially, we note that Hughes does not challenge the legality of the traffic stop. Hughes' sole argument on appeal concerns the constitutionality of the frisk. Hughes argues that the circumstances surrounding the stop of his vehicle, and his resulting actions, did not amount to sufficient grounds

for the officer to perform a frisk of Hughes' person pursuant to *Terry*.

█ Hughes argues that the officer had no evidence to suspect that Hughes was armed and dangerous, given the fact that the officer was only investigating a broken license plate trim. However, pursuant to *Fleenor*, a police officer need not possess reasonable suspicion that an individual is involved in criminal activity before the officer may conduct a *Terry* frisk for weapons. *Fleenor*, 133 Idaho at 556, 989 P.2d at 788. This is so because a "stop-and frisk under *Terry* constitutes two independent actions, each requiring separate justifications." *United States v. Flippin*, 924 F.2d 163, 165 n. 2 (9th Cir.1991). Thus, each action must be analyzed separately and the reasonableness of each must be independently determined. *Fleenor*, 133 Idaho at 556, 989 P.2d at 788. Accordingly, the purpose of the initial vehicle stop is not dispositive of the issue of whether the frisk was lawful.

█ Hughes also contends that the officer's characterization of Hughes' movements in the vehicle as being nervous and fidgety was "unwarranted" and "exaggerated." This assertion challenges the officer's credibility as a witness. At a suppression hearing the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999). The officer was the only witness who testified concerning the facts and circumstances surrounding the frisk at either the preliminary hearing or the hearing on the motion to suppress. Therefore, the testimony of the officer is uncontroverted. The officer testified at the suppression hearing:

> From the moment that I approached the driver's side of the vehicle Mr. Hughes was acting nervous and he began moving around reaching down toward the bottom

of the door and twisting back around the other way, I asked him several times to stop moving while I talked to him, and he continued to do so.

Based on the officer's uncontroverted testimony, the district court found that Hughes was "fidgeting back and forth and stuff like that." This finding by the district court falls firmly within the district court's province to determine the credibility of a witness and, therefore, we will not disturb this finding on appeal.

█ Next, Hughes contends that the height of his vehicle does not provide a basis for suspecting criminal activity. Hughes' argument fails for two reasons. First, Hughes incorrectly states the issue in this case as being whether the officer had a basis for suspecting Hughes of criminal activity. Instead, the issue is whether the officer's observations at the scene provide a reasonable basis to conclude that Hughes may have immediate access to a weapon in his vehicle, thus creating a reasonable fear of present danger to the officer.[1] A weapons frisk is lawful if the officer possesses a reasonable belief that the subject poses such an immediate danger. *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In fact, as previously stated, a reasonable suspicion of criminal activity is not a condition precedent to a *Terry* frisk. *Id.* at 556, 989 P.2d at 786. Second, Hughes' argument isolates the size of his pickup from the rest of the surrounding facts and circumstances within the officer's knowledge. When evaluating the legality of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Id.* at 555, 989 P.2d at 787. Although the height of Hughes' pickup, standing alone, may not have provided grounds for a legal frisk, when coupled with the other circumstances surrounding the frisk, the pickup's height becomes important.

---

1. We note that the United States Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 336 (1977). Furthermore, the Supreme Court has determined that in cases involv- ing a traffic stop, "the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47 (1997).

As noted by the district court, the height of Hughes' truck prevented the officer from being "able to look into the pickup truck and see what the defendant's gestures were." In the end it was those furtive movements, coupled with Hughes' refusal to cease his actions after the officer requested several times for him to do so, which led the officer to remove Hughes from the vehicle and frisk him for weapons.

Based on the evidence, the district court did not err in determining that there were specific and articulable facts which, taken together with rational inferences therefrom, reasonably warranted a frisk for weapons. We further note that upon feeling the object in Hughes' pocket the officer did not remove it, but continued to frisk Hughes for weapons. Hughes, at this point, removed the object from his pocket and threw it away from his person. Because we have determined the frisk to be lawful, Hughes' voluntary abandonment of the container is not tainted by the frisk.

## III.

## CONCLUSION

We hold that the officer's frisk of Hughes for weapons was reasonable and, therefore, Hughes' abandonment of the container was voluntary. For these reasons, the district court's order denying Hughes' motion to suppress is affirmed.

Judge SCHWARTZMAN, and Judge Pro Tem MOSS concur.