**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 31883**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2007 Opinion No. 8** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: March 6, 2007** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| TROY MATTHEW DAVENPORT, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Order denying motion to suppress evidence, <u>reversed</u>.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Thomas Tharp, Deputy Attorney General, Boise, for respondent. Thomas Tharp argued.

LANSING, Judge

Troy Matthew Davenport appeals his conviction for possession of methamphetamine, contending that the district court erred in denying his motion to suppress evidence of the methamphetamine that was found by an officer as he was frisking Davenport. Because we hold that the frisk was not justified by reasonable suspicion that Davenport was armed and dangerous, we reverse.

**I.**

**BACKGROUND**

At about 10:30 on a November evening, a police officer saw Davenport walk away from a pay phone outside a closed convenience store in Boise. The officer stopped his patrol car and called out to Davenport. Davenport turned around and walked back to the officer, answered the officer's questions about his activities and identified himself. The officer later testified that he had not witnessed any criminal activity, and he did not articulate any suspicion that Davenport

1

was engaged in criminality. The officer said that as he spoke with Davenport, he realized that he had encountered Davenport several times in the past with regard to domestic disturbances. The officer also knew that Davenport had used methamphetamine, although he did not testify that he suspected Davenport to be under the influence of drugs that evening.

During their conversation, which was recorded, Davenport repeatedly placed his hands in the pockets of his baggy pants and sweatshirt, and each time was instructed by the officer, in an increasingly forceful tone, to remove them. The fifth time this occurred, the officer told Davenport that he intended to search him for weapons. The officer instructed Davenport to place his hands atop his head and, possibly, restrained his hands. The officer then asked Davenport if he had any weapons or other items that might injure the officer during the search. Davenport responded that he had several syringes in his pocket. The officer thereupon placed Davenport in handcuffs and conducted a search of Davenport's person, which revealed methamphetamine and drug paraphernalia. Davenport was arrested and charged with felony possession of methamphetamine, Idaho Code § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A.

Davenport moved to suppress evidence of these crimes, arguing that the search which yielded the evidence violated the Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution. The district court denied the motion, and Davenport entered a conditional guilty plea reserving the right to appeal the suppression issue.

## II.

## ANALYSIS

The review of a motion to suppress involves a mixed question of law and fact. *State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct. App. 1992); *State v. McAfee*, 116 Idaho 1007, 1008, 783 P.2d 874, 875 (Ct. App. 1989). On appeal, we defer to the findings of the district court unless they are clearly erroneous, but we exercise free review in determining whether constitutional requirements have been satisfied in light of the facts found. *State v. DuValt*, 131 Idaho 550, 552-53, 961 P.2d 641, 643-44 (1998); *Zubizareta*, 122 Idaho at 826, 839 P.2d at 1240.

Davenport makes two principal arguments on appeal. First, he contends that a protective frisk of an individual for weapons may not be conducted by police unless they also reasonably suspect the individual was, or was about to be, engaged in criminal activity. He urges us to

2

overrule our contrary holding in *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999), where we held that an officer engaging an individual in a consensual encounter without suspicion of criminal activity may conduct a frisk if he develops reasonable suspicion that the individual is armed and dangerous. Second, Davenport argues that even if a frisk is permissible in the absence of suspicion of criminal activity that would justify an investigative detention, the frisk here was unlawful because there was no reasonable basis for the officer to suspect that Davenport was armed and dangerous. The State responds that the *Fleenor* rule ought not be overturned and that the frisk here was justified, in the course of a consensual encounter, for officer safety. We find it unnecessary to address Davenport's argument for overruling *Fleenor* because we agree with his contention that the frisk here was not justified.

Both Article I, Section 17 of the Idaho Constitution and the Fourth Amendment to the United States Constitution prohibit unreasonable searches. A law enforcement officer's search of an individual conducted without a search warrant will be deemed unreasonable unless an exception to the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). One such exception allows an officer to conduct a limited pat-down search of a detainee for weapons if the officer reasonably suspects that the person is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Wright*, 134 Idaho 79, 82, 996 P.2d 298, 301 (2000). The purpose of this exception is to enable an officer to continue the contact with the individual without fear of violence. *State v. Rawlings*, 121 Idaho 930, 933, 829 P.2d 520, 523 (1992). Therefore, in evaluating whether a frisk was justified, a court must determine whether the officer had objective grounds to believe that the individual posed a risk of danger to himself or others. *State v. Henage*, Docket No. 31205 (Jan. 26, 2007)

In reviewing the justification for a protective frisk, we look to the facts known to the officer on the scene and the inferences of danger reasonably drawn from the totality of those specific circumstances. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000). Where a police officer's observations lead to a conclusion that a person with whom he is dealing may be armed and dangerous, and where nothing in the initial stages of the encounter serves to dispel the officer's reasonable fear that the situation is unsafe, the officer may conduct a limited search of the person's outer clothing to discover weapons that might be used against the officer or others. *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979); *Adams v. Williams*, 407 U.S. 143, 147-

3

48 (1972); *State v. Hughes*, 134 Idaho 811, 813, 10 P.3d 760, 762 (Ct. App. 2000). As explained by the United States Supreme Court:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27 (citations omitted).

In this case, the State cites four factors as justification for the officer's decision to frisk Davenport: the encounter took place at night; the officer knew Davenport from prior domestic disturbances; the officer was aware that Davenport was a methamphetamine user; and Davenport placed his hands into his large, baggy pockets after the officer repeatedly instructed him not to do so. We conclude, however, that the totality of the circumstances here did not give rise to reasonable suspicion that Davenport was armed and dangerous.

That an encounter occurred late at night can be a relevant factor, but it is most significant if the location is dangerous or associated with crime. *See State v. Dreier*, 139 Idaho 246, 250, 76 P.3d 990, 994 (Ct. App. 2003) (danger to officer greater when individual is at an area suspected of housing an illegal drug operation); *State v. Kester*, 137 Idaho 643, 647, 51 P.3d 457, 461 (Ct. App. 2002) (considering the timing of a late-night encounter at potential drug house in justifying a frisk); *State v. Miller*, 955 P.2d 810, 812 (Wash. Ct. App. 1998) (during nighttime encounter in high crime area, defendant attempted to flee and refused to turn around and to remove his hands from his pockets). In this case, the encounter took place at night, but there was no indication it was in a particularly perilous location or a high crime area.

An officer's previous knowledge of the defendant may also contribute to justification for a protective search, particularly if the officer knows that a defendant carries a weapon, is involved in drug trafficking, or is predisposed to violence. *Dreier*, 139 Idaho at 250-51, 76 P.3d at 994-95 (defendant known to carry a firearm). *See also United States v. Cornelius*, 391 F.3d 965, 966 (8th Cir. 2004) (officer recognized defendant from previous arrests, knew he had outstanding drug distribution warrants, and defendant placed his hand in his jacket pocket and did not obey officer's directive to remove it); *Tucker v. Commonwealth*, 199 S.W.3d 754 (Ky. Ct. App. 2006) (officer had information that defendant had been threatening others with a gun

4

and then approached officer with his hand in his pocket). The officer in this case was aware that Davenport had been involved in domestic disputes, but the testimony on this point was sparse, and did not detail whether Davenport had been an aggressor or used weapons during those incidents. The officer did not testify that Davenport had ever threatened or become violent with officers on those prior occasions. In *Babb*, 133 Idaho at 892-93, 994 P.2d at 635-36, we held that a frisk was not justified when officers detained an individual who had been in a family fight ten minutes earlier, where there was no evidence that the individual was carrying a weapon or had used one in the fight. Similarly here, the officer's vague testimony that Davenport had some history of domestic disputes is not indicative that he posed a threat to the officer.

An officer's observation of an individual's demeanor, including his attitude, nervousness, signs that he is under the influence of drugs or alcohol, or other unusual behavior may also give rise to reasonable fear for an officer's safety. In this case, however, although the officer was aware that Davenport was a methamphetamine user, there is no indication that he thought that Davenport was under the influence of drugs at the time of their encounter. Although Davenport was not completely cooperative, for he kept returning his hands to his pockets, the tenor of the conversation between Davenport and the officer was casual and calm. Davenport exhibited no aggression nor antagonism toward the officer, and placing hands in pockets is not unusual for someone standing outside on a late autumn night in Boise. *See People v. Dotson*, 345 N.E.2d 721 (Ill. App. Ct. 1976) (officer not justified in frisk for weapon when defendant had only shifted his weight on his feet, had placed his hands in his pockets, and taken three steps backwards; actions suggested not a reason for police suspicion but an individual trying to stay warm). We conclude that on the facts presented here, where there was no furtive or aggressive behavior or suspicious circumstances, Davenport's act of returning his hands to his pockets on a cold night despite the officer's contrary instruction did not create reasonable suspicion that he was armed and dangerous. Decisions from other jurisdictions are in accord. For example, in *People v. Davis*, 815 N.E.2d 92 (Ill. App. Ct. 2004), the court held that the officer was not justified in conducting a search when defendant was stopped in a low-crime area outside an open convenience store for the minor infraction of riding a bike at night without a light, seemed nervous, and attempted to put his hand in his pocket after police asked him not to. In *State v. Kyles*, 675 N.W.2d 449 (Wis. 2004), the court determined that an officer did not reasonably suspect that a passenger in a car stopped for a traffic infraction was armed and dangerous, even

5

when it was evening in an active crime area, the defendant was wearing a seasonally appropriate bulky coat that made it difficult to see if anything was concealed on his person, and the defendant twice inserted his hands into his pockets after being instructed not to do so. Another similar case is *People v. Santiago*, 64 A.D.2d 355 (N.Y. App. Div. 1978), where police observed the defendant standing outside a liquor store for approximately twenty minutes, during which he had a brief conversation with another individual and then entered a telephone booth. The officers approached the defendant, who was holding the telephone receiver in one hand and had the other hand in his pocket. The officers ordered him to remove his hand, and when he ignored them and continued speaking on the telephone, they searched him for weapons. The appellate court determined that the search was not permissible because the officers did not have reasonable suspicion that the defendant was armed and dangerous.

Looking at the facts known to the officer on the scene and the inferences reasonably drawn from the totality of those specific circumstances, we hold that the facts presented by the State do not support a reasonable suspicion that Davenport was armed and dangerous. Therefore, the pat-down search was unlawful, and the evidence that it yielded must be suppressed. The district court's order denying Davenport's suppression motion is reversed and the matter is remanded for further proceedings.

Judge GUTIERREZ **CONCURS.**

Judge Pro Tem SCHWARTZMAN, **SPECIALLY CONCURRING**

I concur in the opinion of this Court, although, if left to my own devices, I would reach the same result in a slightly different manner. I begin by referencing some observations I made in my dissent in *State v. Fleenor*, 133 Idaho 552, 557, 989 P.2d 784, 789 (Ct. App. 1999):

> The [curse of the] crankster syndrome has spawned an equal but opposite counteraction by law enforcement agencies to combat this proliferation of drugs and drug abuse. I refer to these police measures as "pro-active" police investigation techniques designed to ferret out drugs in our society. . . . As a result, pro-active police investigations capitalize on such constitutional tools as consent to search, stop and frisk . . ., etc.

However, I also noted that the stop and frisk doctrine is not a shorthand method to invade a person's personal liberty and privacy to rummage around for proof of other crimes. *Id.* at 558, 989 P.2d at 790. Such is the case here.

In *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000), the Court referenced and cited to a number of established constitutional principles applicable here. Law enforcement

6

officers do not violate the Fourth Amendment by merely approaching an individual on the street or another public place. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Police may question citizens without implicating the Fourth Amendment protections. *INS v. Delgado*, 466 U.S. 210, 216 (1984). Indeed, officers remain free to seek cooperation from citizens on the street without being called upon to articulate any level of suspicion or justification for their encounters. The authority to initiate such "police-citizen encounters" is the same as, but no greater than, the authority of an ordinary citizen to approach another on the street and ask questions. By the same token the citizen encountered in this manner has the "right to ignore his interrogator and walk away." *Terry v. Ohio*, 392 U.S. 1, 33 (1968) (Harlan, J., concurring). So long as a person remains at liberty to disregard a police officer's request for information, no constitutional interest is implicated. Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred. *Terry*, 392 U.S. at 19 n.16. Thus, police officers may not place their hands on citizens in search of anything without constitutionally adequate, reasonable grounds for doing so. *Sibron v. New York*, 392 U.S. 40, 64 (1968).

This case tiptoes over the outer limits of Fourth Amendment jurisprudence, where the right of personal privacy to be left alone ostensibly runs up against concerns for police safety on the street. There is no clear, bright dividing line between a permissible pat down and one that is constitutionally infirm. As one court put it, if mapped out, the cases would look like the west coast of Norway (i.e., Idaho's Sawtooth Mountain Range). *See Johnson v. State*, 785 So. 2d 1224, 1226 (Fla. Dist. Ct. App. 2001). The analytical difficulty often arises because it can be hard to distinguish a "voluntary" citizen encounter from an investigatory stop. More precisely, this case stubs its toe on the constitutional rubric that during a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them and walk away because he is "theoretically" free to leave. *Id.*

The officer's conduct here went well beyond a mere consensual encounter and amounted to an investigatory seizure for which there was an inadequate legal basis.[1] The first words out of the officer's mouth, after the salutation, "How are you doing, Boise Police. What's going on

---

[1]    The officer freely admitted he had no suspicion of any criminal activity when he greeted Davenport and no right to detain him.

tonight?" are, "Can you get your hands out of your pockets?" to "Get your hands out of your pockets!!" repeated with increasing intensity in rapid succession three more times, whereupon Davenport is advised that he is going to be frisked and told to put his hands on top of his head.[2] Between the first hail and hands out of pocket request, a total of just seven (7) seconds had elapsed. In all, just over one minute (one minute and eleven seconds to be precise) in time transpired between the initial hail and greet, and the laying on of hands. This is hardly the typical citizen encounter one would expect from some stranger on the street asking for directions, a pollster, salesperson, or religious pamphleteer seeking converts.

The timing, intensity, and peremptory nature of the officer's conduct, immediately demanding that Davenport remove his hands from his pockets, amounts to an illegal seizure or investigatory detention of the person, pure and simple. *See Harrison v. State*, 627 So. 2d 583 (Fla. Dist. Ct. App. 1993); *Burton*, 228 F.3d at 528. Davenport was simply NOT free to walk away from this police-initiated encounter--of the *third kind*--after the opening seven seconds of salutation.[3] He was seized in the constitutional Fourth Amendment sense and would have been forcibly stopped and possibly arrested (for obstruction or delay of police officer, no doubt, I.C. § 18-705) had he turned and walked away. Lest we forget, a *seizure* occurs when one's freedom of movement has been restrained, either by physical force or a showing of authority, so that the surrounding circumstances demonstrate a reasonable person would not have felt free to leave. *Terry*, 392 U.S. 1.

Accordingly, because the seizure was illegal, so was the frisk, and the evidence must be suppressed.

---

[2]   Davenport was not ever asked if he would "consent" to a search.

[3]   Perhaps this hail, greet and remove your hands technique should be euphemistically dubbed a *close encounter of the involuntary kind*.

8