76 P.3d 990

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Arnold Albert DREIER, Jr., Defendant–Appellant.**

**No. 27717.**

Court of Appeals of Idaho.

May 29, 2003.

Review Denied Sept. 22, 2003.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

Arnold Albert Dreier, Jr., appeals from his judgments of conviction and sentences for unlawful possession of a firearm, possession of methamphetamine, and misdemeanor possession of marijuana. Dreier also appeals from the denial of his I.C.R. 35 motion for reduction of his sentences. We affirm in part, but remand for the entry of amended judgments of conviction. We also affirm the denial of Dreier's Rule 35 motion.

## I.

### FACTS AND PROCEDURE

On the afternoon of October 12, 2000, law enforcement officers arrived at a home in Bonner County for the purpose of conducting a warrantless search. The officers had been given consent to search the home by one of the home's occupants as a condition of his pre-trial release from jail on a pending charge of attempted manufacturing of methamphetamine. When the officers arrived, they encountered a woman standing on the front porch who told the officers that the residents of the home were not there. The woman informed the officers that a man,

identified as Dreier, was asleep inside. The woman was instructed to awaken Dreier and bring him outside.

When Dreier emerged, he informed one of the officers that he was a visitor to the home and that he had arrived earlier that morning. Dreier also indicated to the officer that he was aware that the home was subject to a search provision. The officer asked Dreier if there were any drugs inside the home. Dreier responded that there were drugs located in his "stuff." The officer asked Dreier if there was marijuana or other controlled substances in the home, and Dreier replied that there might be marijuana in his stuff. Dreier then sought the officer's permission to go to the side of the home to urinate. The officer asked Dreier whether he had any weapons and Dreier motioned to his side. The officer observed a leather case attached to Dreier's belt. Dreier indicated that it was a Leatherman tool. The officer took the Leatherman from Dreier's belt and asked Dreier if he had any other weapons. Dreier stated that he did not think he did. The officer patted Dreier down and noticed two bulges in Dreier's left front pants pocket. Dreier stated that the bulges were lighters. As the officer began manipulating one of the bulges to determine whether it was a weapon, a bag of marijuana fell out.

Dreier was then advised of his *Miranda*[1] rights. The officer asked Dreier whether he had any other controlled substances in the home, and Dreier indicated that he had a blue gym bag inside the home that possibly contained another bag of marijuana. Dreier offered to retrieve the gym bag and give it to the officer but the officer declined. The officer asked Dreier whether there were any other controlled substances in the bag, such as methamphetamine, and Dreier stated that he was unsure. The officer inquired whether Dreier's uncertainty was based on the possibility that there could be methamphetamine in the gym bag and Dreier could not recall or whether it was because Dreier had carried methamphetamine in the bag in the past. Dreier responded that he hoped there was no methamphetamine in the gym bag and admitted that he had transported methamphetamine in the bag in the past. During the

encounter, Dreier informed the officer that he had used methamphetamine on the previous day.

Thereafter, the officer searched the residence and found Dreier's partially open gym bag. Through the opening, the officer observed a plastic bag containing a green material that the officer believed to be marijuana. The officer opened the gym bag and immediately noticed another plastic bag containing a white powdery substance, which the officer believed to be methamphetamine, and a loaded firearm.

Dreier was charged with unlawful possession of a firearm, I.C. § 18–3316; possession of methamphetamine, I.C. § 37–2732(c)(1); and misdemeanor possession of marijuana, I.C. 37–2732(c)(3). Dreier filed a pre-trial motion to suppress all evidence and statements obtained as a result of the pat-down search conducted by the officer and the search of Dreier's gym bag. Dreier's motion was denied.

After a jury trial, Dreier was found guilty of all charges. For unlawful possession of a firearm, Dreier was sentenced to a determinate five-year term. For possession of methamphetamine, the district court sentenced Dreier to a consecutive unified term of seven years, with a minimum period of confinement of one year. For misdemeanor possession of marijuana, Dreier was sentenced to a determinate one-year term to be served concurrent with his sentence for unlawful possession of a firearm. Dreier filed a Rule 35 motion, which was denied.

Dreier appeals, asserting that: (1) the district court erred by denying his motion to suppress; (2) the district court erroneously admitted prior bad acts testimony at trial; (3) his written judgments of conviction vary from the district court's oral pronouncement of his sentences; (4) his sentences are excessive; and (5) the district court abused its discretion by denying his Rule 35 motion.

## II.

### ANALYSIS

#### A. Motion to Suppress

█ Dreier first claims that the district court erred by denying his motion to sup-

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

press because the pat-down search of him and the warrantless search of his gym bag were constitutionally unreasonable. The facts pertinent to Dreier's motion to suppress are not disputed. The district court's application of constitutional principles to the undisputed facts is a question of law over which we exercise free review. *State v. Delacerda,* 135 Idaho 903, 904, 26 P.3d 1240, 1241 (Ct.App. 2001). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App.1999).

### 1. Pat-down search

Dreier contends that the pat-down search conducted by the officer violated his rights under the Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution.[2] Dreier does not challenge the validity of his initial detention. Rather, Dreier argues that the pat-down search was unconstitutional because it was unreasonable for the officer to believe that he might be armed and dangerous.

■ A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira,* 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb,* 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App. 2000); *State v. Fleenor,* 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999). Grounds to justify a lawful investigatory stop do not automatically justify a frisk for weapons. *Babb,* 133 Idaho at 892, 994 P.2d at 635. An

officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; *Babb,* 133 Idaho at 892, 994 P.2d at 635; *Fleenor,* 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb,* 133 Idaho at 892, 994 P.2d at 635; *Fleenor,* 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir,* 116 Idaho 565, 567–68, 777 P.2d 1238, 1240–41 (Ct.App.1989).

■ In the instant case, we agree with the district court's conclusion that there were specific and articulable facts known to the officer that justified the pat-down search of Dreier. The officer's encounter with Dreier occurred at a home subject to search for suspected drug manufacturing activity. The danger posed to the safety of an officer conducting a search of premises suspected of housing an illegal drug operation is increased by the presence of a person found on the premises, who may be involved in the criminal activities therein. *See State v. Pierce,* 137 Idaho 296, 299–300, 47 P.3d 1266, 1269–70 (Ct.App.2002) (The threat of violence to officers conducting a search of home suspected of housing an illegal drug operation is greater because of the recognized propensity of persons engaged in selling narcotics to carry firearms.). *See also United States v. Patterson,* 885 F.2d 483, 485 (8th Cir.1989) ("The possible danger presented by an individual approaching and entering a structure housing a drug operation is obvious. In fact, it would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances.").

Additionally, the officer who conducted the pat-down search of Dreier had been present

---

2. Because Dreier does not assert that Article I, Section 17 of the Idaho Constitution affords greater protection than the Fourth Amendment, we will not separately address the state constitutional claim. *See State v. Ross,* 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996); *State v. Jordan,* 122 Idaho 771, 772 n. 2, 839 P.2d 38, 39 n. 2 (Ct.App.1992).

when a search warrant was previously executed at the same home. During the previous search, officers recovered approximately sixteen weapons from the home and some of the weapons were loaded. The officer was also aware that Dreier was a frequent visitor to the home and that Dreier was known to carry a firearm. Thus, there were specific and articulable facts known to the officer which would lead a reasonable prudent person to believe that Dreier could be armed and dangerous.

Furthermore, nothing in the initial stages of the encounter served to dispel the officer's reasonable belief. When the officer asked Dreier whether he had any weapons, Dreier made a motion to his side indicating that he did have a weapon. The officer recovered a Leatherman, which the officer described as a tool similar to a knife or other object capable of cutting. In view of the specific and articulable facts known to the officer at the scene and based on the reasonable inferences drawn from a totality of the specific circumstances presented, this Court concludes that the pat-down search of Dreier was lawful.

### 2. Search of the gym bag

Dreier next claims that the warrantless search of his gym bag was constitutionally impermissible because he maintained a reasonable expectation of privacy in the contents of the gym bag and there was no applicable exception to the warrant requirement. The constitutional safeguards of the Fourth Amendment protect an individual's legitimate expectation of privacy, which has been defined as a subjective expectation of privacy that society is prepared to recognize as reasonable. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 223 (1984); *State v. Donato,* 135 Idaho 469, 471, 20 P.3d 5, 7 (2001); *State v. Clark,* 124 Idaho 308, 316, 859 P.2d 344, 352 (Ct.App.1993). A Fourth Amendment analysis involves determining whether the defendant exhibited an actual, subjective expectation of privacy by seeking to preserve the matter as private, and if so, whether the defendant's expectation was objectively reasonable under the circumstances. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979); *State v. Wilkins,* 125 Idaho 215, 222, 868 P.2d 1231,

1238 (1994). The United States Supreme Court has recognized that containers and other items which serve as a repository for one's personal belongings are entitled to as much protection under the Fourth Amendment as is one's home. *See United States v. Chadwick,* 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538, 548 (1977), *overruled on other grounds by California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

A legitimate expectation of privacy means more than a subjective expectation of not being discovered. *State v. Jennings,* 101 Idaho 265, 266, 611 P.2d 1050, 1051 (1980). There can be no reasonable expectation of privacy in what a person knowingly exposes to the public. *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581 (1967). In passing upon a claim of unreasonable governmental intrusion, we examine the defendant's efforts to protect his or her own privacy from observation by the general public, taking into account norms of social conduct and the nature of the premises. *State v. Morris,* 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998). The burden of proving a legitimate expectation of privacy lies with the defendant. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980); *Delacerda,* 135 Idaho at 905, 26 P.3d at 1242.

The district court determined that Dreier did not maintain a reasonable expectation of privacy in the gym bag and that, therefore, the constitutional safeguards of the Fourth Amendment were not implicated. The district court stated:

It's in a place that he knows is subject to the search provision, No. 1, just like the State said.

No. 2, the bag was partially opened. It's undisputed that there was a plain view of the marijuana baggie without disturbing the bag.

No. 3, Mr. Dreier had—had made admissions as to the contents of the bag. It was the officer's obligation to gather incriminating evidence at that time. And Mr. Dreier had abandoned any subjective interest in that bag when he had told the

officer that he had some marijuana, he didn't want to get [the occupants] in trouble as a result of things he had in his possession in his bag and he basically surrendered the evidence that he had confessed to the officer that he had. And so there just is no reasonable subjective nor objective expectation of privacy in the bag in that residence at the time that the officers, rather than allow Mr. Dreier to go and retrieve it as he offered to do but rather the officers went and seized it.

We do not agree with the district court's determination that Dreier's knowledge of the search provision of another person's pretrial release from jail deprived him of a reasonable expectation of privacy in his gym bag. *See State v. Barker,* 136 Idaho, 728, 730–31, 40 P.3d 86, 88–89 (2002). Nevertheless, we conclude that Dreier did not exhibit a legitimate expectation of privacy in the gym bag and that the officer's search of it was constitutionally permissible. Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. *Arkansas v. Sanders,* 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235, 245 n. 13 (1979), *overruled on other grounds by California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Some containers by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. *Id.* Similarly, in some cases the contents of a package will be open to plain view, thereby obviating the need for a warrant. *Id.* By leaving his gym bag partially open to the view of others, Dreier did not manifest a subjective expectation of privacy as to that portion of its contents which was exposed.

▪ Additionally, a defendant's disclosure of the contents of a package has a practical effect similar to placing the contents in plain view, thereby reducing the defendant's reasonable expectation of privacy in the container. *See United States v. Martino,* 664 F.2d 860, 874 (2d Cir.1981) (Any

time an individual discloses the contents of a package, the individual's ability to keep the contents secret is reduced and there is no further reasonable expectation of privacy.) *See also United States v. Candella,* 469 F.2d 173, 175 (2d Cir.1972). In the case at bar, Dreier informed the officer at the outset of the encounter that the gym bag contained marijuana. Dreier further offered to retrieve the bag and give it the officer with the expectation that the officer would search it.

This Court concludes, as did the district court, that by leaving his gym bag partially open revealing illegal contraband inside, by telling the officer the contents of the gym bag, and by offering to retrieve the gym bag for the officer, Dreier failed to exhibit a subjectively or objectively reasonable expectation of privacy in the gym bag. Therefore, we hold that the warrantless search of the gym bag was constitutionally reasonable.

In sum, we conclude that the pat-down search of Dreier was justified by the specific and articulable facts known to the officer at the scene and the reasonable inferences drawn from a totality of the specific circumstances presented. We further conclude that the warrantless search of Dreier's gym bag was constitutionally reasonable because Dreier failed to exhibit a legitimate expectation of privacy therein. Accordingly, we hold that the district court did not err by denying Dreier's motion to suppress.

**B. Admission of Prior Bad Acts Evidence**

▪ Prior to trial, Dreier moved to exclude testimony concerning his statements that he had carried methamphetamine in the gym bag in the past and that he had used methamphetamine on the day prior to the search pursuant to I.R.E. 404(b).[3] Dreier claimed that such testimony constituted inadmissible prior bad acts evidence. The district court concluded that, although the statements were relevant to Dreier's knowledge of methamphetamine, the admission of both statements would be unduly prejudicial.

---

**3.** Idaho Rule of Evidence 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted

in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Therefore, only Dreier's statement that he had carried methamphetamine in the bag in the past was ultimately admitted in the state's case-in-chief.

On appeal, Dreier asserts that the district court erred by admitting this testimony. Dreier argues that his knowledge that the substance he possessed was methamphetamine was not an element of the crime of possession and that the statement was consequently irrelevant.

■■■■ Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct.App. 1987). However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct.App. 2002). In determining the admissibility of evidence of prior bad acts, this Court applies a two-prong analysis. First, the evidence must be relevant to a material disputed issue concerning the crime charged. *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). Whether evidence is relevant is an issue of law. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). Therefore, when considering admission of evidence of prior misconduct, we exercise free review of the trial court's relevancy determination. *Id.* The second step in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* When reviewing this step we use an abuse of discretion standard. *Id.*

Contrary to Dreier's contention, one of the elements of the crime of possession of methamphetamine is that the defendant knew that the substance he or she possessed was methamphetamine. *See State v. Blake*, 133 Idaho 237, 241 n. 1, 985 P.2d 117, 121 n. 1 (1999); *State v. Lamphere*, 130 Idaho 630, 633, 945 P.2d 1, 4 (1997); I.C.J.I. 403. Relying on *State v. Fox*, 124 Idaho 924, 866 P.2d 181 (1993), Dreier correctly asserts that knowledge that the substance possessed is a controlled substance, i.e., *illegal*, is not an element of the crime of possession. However, *Fox* is inapposite to the instant case because the evidence was not admitted to show Drei-er's knowledge that the possession of methamphetamine is illegal. Dreier's statement that he had carried methamphetamine in the bag in the past was relevant to both his knowledge of whether the substance found in the gym bag was methamphetamine and to his knowledge of possession of the substance.

■■■■ We now examine whether Dreier's statement, although relevant, was nevertheless inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice under I.R.E. 403. Dreier asserts that the danger of unfair prejudice substantially outweighed the probative value of the statement because the statement tended to portray him as a "druggie" who was predisposed to commit crimes like the one charged. We are not persuaded. This evidence was highly probative to show that the methamphetamine found in the gym bag belonged to Dreier and that he knowingly possessed it. In addition, prior to the admission of the challenged statement, the officer had testified that Dreier admitted at the outset of their encounter that there was marijuana located in the gym bag. The officer had also testified that a bag of marijuana fell from Dreier's pants when the officer conducted the pat-down search. Finally, the officer testified that when he asked Dreier if there were other controlled substances in the gym bag, such as methamphetamine, Dreier responded that he was unsure. Based upon the probative value of Drier's admission and the evidence of Dreier's drug involvement already presented to the jury, this Court concludes that the probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, we hold that no error has been shown in the admission of the statement at trial.

## C. Sentence Review

■■■■ Dreier claims that his sentences, as articulated in his written judgments of conviction, are inconsistent with the sentences pronounced at the sentencing hearing. The transcript from that hearing indicates that Dreier was sentenced as follows:

[F]or the felony offense of unlawful possession of a firearm, the court imposes a fixed five-year term to be followed consec-

utively by another term for possession of a controlled substance, methamphetamine, and that term shall be not less than one, no more than seven years. And the court agrees with the prosecution that the one-year sentence for possession of marijuana should be concurrent with the five-year fixed sentence. So the net effect is that Mr. Dreier is sentenced to when all of these three offenses are considered together to not less than 6 years and not more than 12.

Conversely, Dreier's written judgments of conviction provide:

Count One, [possession of methamphetamine], not less than one (1) year fixed, six (6) years indeterminate, not to exceed seven (7) years, to be served consecutively with Counts Two and Three.

Count Two, [unlawful possession of a firearm], for a period of five (5) years fixed, to be served consecutively with Count One and concurrent with Count Three.

Count Three, [misdemeanor possession of marijuana], for a period of one (1) year fixed, to be served consecutively with Count One and concurrent with Count Two.

 When there is a disparity between the sentence imposed in open court and that expressed in the written judgment of conviction, it is the orally pronounced sentence that is effective. *State v. Watts*, 131 Idaho 782, 786, 963 P.2d 1219, 1223 (Ct.App. 1998). The only legally cognizable sentence in a criminal case is the actual oral pronouncement in the presence of the defendant. *Id.* Dreier's written judgments of conviction are inconsistent with the district court's oral pronouncement of Dreier's sentences and are, additionally, internally inconsistent. The written judgments of conviction are ambiguous with respect to Dreier's sentences for unlawful possession of a firearm and possession of methamphetamine because it is unclear in what order Dreier's sentences are to be served. The written judgments of conviction appear to provide that Dreier's determinate five-year sentence for unlawful possession of a firearm is to run consecutive to his sentence for possession of methamphetamine, which is not the manner imposed in open court. According to the sentences

orally pronounced by the district court, Dreier's sentence for unlawful possession of a firearm is to be served first, followed by a consecutive sentence for unlawful possession of methamphetamine. Therefore, this case must be remanded to the district court for the entry of amended judgments of conviction with respect to Dreier's sentences for unlawful possession of a firearm and possession of methamphetamine.

Dreier next contends that his sentences are excessive. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett*, 134 Idaho 271, 1 P.3d 299 (Ct.App.2000); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App.1989); *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982). After applying the foregoing standards and upon review of the record in this case, we cannot say that the district court abused its discretion.

### D. Rule 35

 Finally, Dreier asserts that the district court erred by denying his Rule 35 motion for reduction of sentences. Initially, we note that an order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established. *See State v. Hernandez*, 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991); *State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct.App.1984); *Toohill*, 103 Idaho 565, 650 P.2d 707.

 If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez*, 121 Idaho at 117, 822 P.2d at 1014. Here, Dreier did not present additional information in support of his Rule 35 motion. Having concluded that Dreier's sentences were reasonable at the time they were pronounced and being presented with no additional information upon which to consider Dreier's request, this Court concludes that no error in the district court's denial of Dreier's Rule 35 motion has been shown.

### III.

### CONCLUSION

We conclude that the pat-down search of Dreier was justified by the specific and articulable facts known to the officer at the scene and the reasonable inferences drawn from a totality of the specific circumstances presented. We also conclude that the warrantless search of Dreier's gym bag was constitutionally reasonable because Dreier failed to exhibit a legitimate expectation of privacy therein. Accordingly, we hold that the district court did not err by denying Dreier's motion to suppress.

We further conclude that there was no error in the admission of Dreier's statement that he had carried methamphetamine in the gym bag in the past. Dreier's statement was relevant to his knowledge of what methamphetamine is and to his knowledge of possession. Additionally, its probative value was not outweighed by the danger of unfair prejudice.

Finally, we conclude that Dreier's sentences are not excessive and that no error has been shown in the denial of his Rule 35 motion for reduction of sentences. Therefore, Dreier's judgments of conviction and sentences, and the district court's denial of his Rule 35 motion, are affirmed. However, because Dreier's written judgments of conviction are inconsistent with the sentences imposed by the district court at Dreier's sentencing hearing and are internally inconsistent, this case is remanded to the district court for the entry of amended judgments of conviction with respect to Dreier's sentences for unlawful possession of a firearm and possession of methamphetamine.

Chief Judge LANSING and Judge GUTIERREZ, concur.