**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37068**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Opinion No. 81 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 10, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DALE FRANCIS CROOKS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Order denying motion to suppress evidence, affirmed.

Daniel G. Cooper, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Dale Francis Crooks appeals from the judgment of conviction entered upon a jury verdict finding him guilty of possession of methamphetamine and possession of marijuana. Specifically, he challenges the denial of his motion to suppress evidence. We affirm.

## I.

## FACTS AND PROCEDURE

In April 2009, Kootenai County Sheriff's Sergeant Eric Hildebrandt obtained information that Kristopher Eby had sold methamphetamine to a woman named K.K. and had been harassing her regarding money she owed him for drug purchases and attempting to sell her more. Sergeant Hildebrandt learned from K.K. that because Eby was on felony probation, he did not keep methamphetamine at his home, but instead it was held for him by Dale Crooks who would supply the drugs when contacted by Eby.

Sergeant Hildebrandt arranged for K.K. to make a controlled purchase of methamphetamine from Eby. She was fitted with a transmitter, given money to buy the drugs,

1

and followed by Sergeant Hildebrandt to Eby's residence. At the home, K.K. purchased methamphetamine from Eby, who had just purchased it from a neighbor. Upon leaving the residence, K.K. turned the drugs over to Sergeant Hildebrandt.

Sergeant Hildebrandt requested that officers secure the premises in anticipation of execution of a search warrant for Eby's house. While waiting for the search warrant to be issued, several officers, including FBI Special Agent Sotka, entered the residence pursuant to Eby's consent to searches as a term of his probation. While three officers entered the front door, Agent Sotka and another officer secured the back door. Agent Sotka heard his fellow officers issue commands to the occupants, indicating to him that there had been contact made with the persons inside. Agent Sotka proceeded to the front of the residence and found three individuals, including Crooks, lying on their stomachs in the front living room. Agent Sotka observed another officer calling for a fourth individual to come out of the back of the residence, and he assisted that officer in handcuffing the fourth individual when he emerged from a back bedroom. The other three occupants were handcuffed and after officers performed a protective sweep of the premises, Agent Sotka performed pat-down searches of at least two of the individuals lying on the floor. Upon frisking Crooks, Agent Sotka felt a hard object in Crooks' pants pocket. He asked Crooks whether the object was anything that could be used to harm the officers and Crooks replied that it was a pipe. Crooks told Agent Sotka that he could remove the pipe from his pocket, which Agent Sotka did.

Tests indicated that the residue in the pipe was methamphetamine, and Crooks was arrested and charged with possession of drug paraphernalia, Idaho Code § 37-2734A, and possession of a controlled substance, I.C. § 37-2732(c)(1). He filed a motion to suppress the pipe, contending that the frisk was unreasonable because Agent Sotka did not have the requisite suspicion that Crooks was armed and dangerous in order to justify the frisk. The district court denied the motion, and a jury found Crooks guilty as charged. Crooks now appeals the denial of his motion to suppress.

## II.

## ANALYSIS

Crooks asserts that the district court erred in denying his motion to suppress on grounds that the officer's frisk violated his Fourth Amendment right to be free from unreasonable

searches because the officer did not have particularized suspicion that Crooks was presently armed and dangerous.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

To be reasonable, a search must be authorized by a warrant that is based on probable cause, unless one of the exceptions to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Bishop*, 146 Idaho 804, 818, 203 P.3d 1203, 1217 (2009). One such exception is the pat-down search for weapons acknowledged by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Under *Terry*, an officer may conduct a limited pat-down search, or frisk, of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons. *Terry*, 392 U.S. at 16, 30. *See also Florida v. J.L.*, 529 U.S. 266, 270 (2000). Such a frisk is justified only when, at the moment of the frisk, the officer has reason to believe that the individual he or she is investigating is armed and presently dangerous to the officer or to others and nothing in the initial stages of the encounter dispels the officer's belief. *Terry*, 392 U.S. at 24, 30. The test is an objective one that asks whether, under the totality of the circumstances, a reasonably prudent person would be justified in concluding that the individual posed a risk of danger. *Bishop*, 146 Idaho at 818, 203 P.3d at 1217; *State v. Henage*, 143 Idaho 655, 660-61, 152 P.3d 16, 21-22 (2007). *See also Terry*, 392 U.S. at 27. To satisfy this standard, the officer must indicate specific and articulable facts which, taken together with rational inferences from those facts, in light of his or her experience, justify the officer's suspicion that the individual was armed and dangerous. *Bishop*, 146 Idaho at 818-19, 203 P.3d at 1217-18; *Henage*, 143 Idaho at 660, 152 P.3d at 21. Although an officer need not possess absolute certainty that an individual is armed and dangerous, an officer's inchoate and unparticularized suspicion or "hunch" is not enough to justify a frisk. *Terry*, 392 U.S. at 27.

In denying the motion to suppress, the district court stated the following:

3

[I]n this particular instance, the officer that conducted the pat down of Mr. Crooks had knowledge that a narcotics transaction had just taken place in that apartment, in that residence, in a reasonable time period before the detention and the pat down. That it is not uncommon, in fact, it is not at all uncommon, it is usual, it is frequent for those who are involved in the sale or the delivery of drugs to be armed in some way. And that it is not unusual for persons who have been ingesting methamphetamine to be aggressive individuals. And there was evidence that persons in that particular residence had been ingesting methamphetamine, that they may be more aggressive persons. All of those reasons led to it being a reasonable precaution by law enforcement to conduct the pat of Mr. Crooks outside of his clothing.

In *Bishop*, 146 Idaho 804, 203 P.3d 1203, our Supreme Court addressed the lawfulness of an officer's frisk of Bishop where the frisking officer had been informed that Bishop had attempted to sell methamphetamine to two carnival workers. After receiving this information, the officer located Bishop exiting a market and pulled up next to him in his patrol vehicle. The officer attempted to speak with Bishop, but Bishop said "hello" and kept walking. Once the officer informed Bishop that he wanted to ask him about methamphetamine, Bishop stopped walking, informed the officer that he was a Christian, that Jesus loved the officer, and that he had just gotten off probation and was headed to work. Standing approximately five feet from Bishop, the officer observed that Bishop's pupils were dilated, his eyes were bloodshot, and that he had a "wild look in his eye," leading the officer to believe Bishop was under the influence of narcotics. The officer also noticed that Bishop appeared nervous and was holding a white grocery sack close to his chest. Based on these facts, the officer attempted to frisk Bishop, which Bishop resisted. The officer later testified that he had performed the frisk because Bishop's "statements . . ., physical body language, [and] everything about [the situation] made me *feel* that [Bishop] *could possibly* have a weapon on him." *Id*. at 819-20, 203 P.3d at 1218-19 (emphasis in original).

In analyzing the lawfulness of the frisk on appeal, the Supreme Court listed several factors that influence whether a reasonable person in an officer's position would conclude that a particular person was armed and dangerous, including:

whether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

4

*Id.* at 819, 203 P.3d at 1218 (citations omitted). The Court then concluded that the officer's frisk was unlawful because the officer had not identified any objective facts to support his conclusion that his safety was in danger. *Id.* The Court pointed out that the encounter with Bishop took place in public while it was still light out, the officer did not observe any bulges in Bishop's clothing or other facts that would have indicated that Bishop was carrying a weapon. Bishop did not have a reputation for violence or act in a threatening manner. Bishop was cooperative and compliant when stopped, did not make any furtive movements, and had his hands visible to the officer at all times. On this basis the Court concluded that a reasonable person would not have concluded that Bishop was armed and dangerous.

Crooks contends that the frisk in this case was not supported by particularized suspicion that he was armed and dangerous as none of the factors identified in *Bishop* as influencing whether a reasonable person would have believed as much were present. Specifically, there was no testimony that Crooks acted nervous or agitated, that the officer observed any bulges in his clothing, or that he made any furtive or threatening movements. We conclude, however, that several facts make this case distinguishable from the outcome in *Bishop*. There, the officer was dealing with a single person in a public setting. In this case the officers were encountering a number of people in a private residence that was known to have been the site of repeated drug sales and where a drug transaction had just occurred.

The known history of drug dealing in the residence and Crooks' connection to the drug dealing cannot be ignored. Notably, the *Bishop* Court did not indicate that its list of factors to consider in determining the reasonableness of a belief that a suspect is armed and dangerous was exhaustive. Courts have regularly recognized the danger faced by officers when confronting drug enterprises and have frequently validated elevated investigatory techniques in these situations even where other indicia that a suspect is armed and dangerous are absent. David A. Harris, *Factors for Reasonable Suspicion: When Black and Poor Means Stopped and Frisked*, 1969 IND. L.J. 659, 676-77 (1994). And while *Bishop* makes it clear that the *mere* suspicion of involvement in drugs is insufficient to validate a frisk (where the frisk was held unlawful even where the officer had gotten a tip that Bishop had attempted to sell methamphetamine and it was apparent to the officer that Bishop was under the influence of narcotics), the concept recognized by many jurisdictions that an individual's proximity to or involvement with drug transactions or

5

distribution is still useful in that it may be one factor supporting the requisite suspicion to effect a frisk. *See*, *e.g.*, *United States v. Johnson*, 364 F.3d 1185, 1194-95 (10th Cir. 2004) (holding a frisk was valid where the officer "reasonably suspected that [the defendant] might be involved in drug dealing, kidnapping, or prostitution" which are crimes "typically associated with some sort of weapon, often guns"); *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe that a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."); *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1086 (9th Cir. 2000) ("Because the police reasonably suspected [the defendant] of dealing in narcotics, it was not unreasonable to believe that he might be armed."); *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998) ("[W]hen the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons" given that "[t]he indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer."); *United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir. 1988) (holding that a frisk of vehicle occupants was reasonable where an officer had observed large amounts of money on the front seat, believed that it was drug money, and became concerned for his safety "because persons involved with drugs often carry weapons"); *State v. Bechtold*, 783 P.2d 1008, 1010 (Or. Ct. App. 1989) (the fact that officers "knew that people involved in the manufacture and transportation of [methamphetamine] commonly carry weapons" was part of justification for the frisk). This proposition is supported by *Terry* itself where the Supreme Court recognized it was reasonable to assume from the nature of the offense contemplated that Terry was armed and dangerous even though the officer had not observed a weapon or any physical indication of a weapon. *Terry*, 392 U.S. at 28.

In *State v. Dreier*, 139 Idaho 246, 76 P.3d 990 (Ct. App. 2003), this Court recognized the significance of involvement in drug activity as a factor in determining whether it was reasonable to believe that a person was armed and dangerous such that a frisk was warranted. In that case, having received consent to search the premises from a home's occupants who were being held on suspicion of manufacturing methamphetamine, an officer immediately frisked Dreier who emerged from the house prior to the officers' entrance. In addition to the fact that an officer present at a previous search of the premises had recovered several loaded weapons and that

6

Dreier was known to carry a weapon, we also determined that his exit from a site of suspected illegal drug operations was significant in validating the pat down.[1]  *Id*. at 250-51.  We specifically emphasized that:

> The officer's encounter with Dreier occurred at a home subject to search for suspected drug manufacturing activity.  The danger posed to the safety of an officer conducting a search of premises suspected of housing an illegal drug operation is increased by the presence of a person found on the premises, who may be involved in the criminal activities therein.  *See State v. Pierce*, 137 Idaho 296, 299-300, 47 P.3d 1266, 1269-70 (Ct. App. 2002) (The threat of violence to officers conducting a search of home suspected of housing an illegal drug operation is greater because of the recognized propensity of persons engaged in selling narcotics to carry firearms.).  *See also United States v. Patterson*, 885 F.2d 483, 485 (8th Cir. 1989) ("The possible danger presented by an individual approaching and entering a structure housing a drug operation is obvious.  In fact, it would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances.").

*Id*. at 250, 76 P.3d at 994.

In this case, Agent Sotka knew that drug transactions were occurring in the apartment-- specifically that K.K. had just purchased drugs in the residence, and he had reason to believe Crooks was the supplier of at least some of the drugs sold there.  Like Dreier, Crooks was present in a private residence associated with illegal drug activity, and several other persons known to be associated with drug activity were also present.

Given our recognition of the reasonableness of the belief that drug crimes are often accompanied by weapons use, and that the need to promptly neutralize this risk is crucial to officer safety, we conclude that the presence of organized or ongoing drug dealing is a factor to be considered when determining whether a frisk was lawful.  In this case, given the evidence of Crooks' involvement in the drug sales at the residence and the fact that the officers were faced with an unknown number of people in an enclosed private residence, we conclude there existed the requisite suspicion that Crooks was armed and dangerous at the inception of the frisk.

---

[1]     The fact that an officer on the scene was aware that Dreier was a frequent visitor to the home and that he was known to carry a weapon was also considered by this Court in its totality of the circumstances inquiry.  Additionally, we noted "nothing in the initial stages of the encounter served to dispel the officer's reasonable belief" that Dreier may have been armed and dangerous.  When asked whether he had any weapons, Dreier had motioned to his side and indicated that he did.  The officer then recovered a Leatherman tool from Dreier.

Accordingly, we hold the frisk was legally justified and affirm the district court's denial of Crooks' motion to suppress.

Chief Judge LANSING and Judge GRATTON, CONCUR.