IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 39917

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 374 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 13, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BRANDON DEAN KINGSLEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for possession of a controlled substance, vacated and case remanded.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

GUTIERREZ, Chief Judge

Brandon Dean Kingsley appeals from his judgment of conviction entered upon his conditional guilty plea to possession of a controlled substance (methamphetamine). Specifically, Kingsley argues the district court erred by denying his motion to suppress evidence. For the reasons that follow, we reverse the ordering denying the motion to suppress evidence, vacate Kingsley's judgment of conviction, and remand the case to the district court.

## I.

## FACTS AND PROCEDURE

In September 2011, four unmarked police vehicles pulled up in front of a probationer's house in Post Falls. Members of the North Idaho Violent Crimes Task Force accompanied a probation officer in order to assist with a probation search of the probationer's house.

As the vehicles approached the probationer's house, Coeur d'Alene Police Department Detective Todd saw Kingsley, whom the detective did not recognize, but knew was not the

1

probationer. Kingsley was standing next to a slightly raised garage door in the probationer's driveway, talking on a cell phone. At the preliminary hearing and suppression hearing, Detective Todd recalled that he was concerned that Kingsley was a lookout for the probationer. Detective Todd exited the vehicle and showed his badge to Kingsley. Detective Todd then "told [Kingsley] to get off the phone" and "asked [Kingsley] to come over to where [the detective] was at . . . ." Kingsley complied, and Detective Todd asked Kingsley if he had any weapons. Kingsley responded that he had "glass" on him, and Detective Todd asked Kingsley if he could take the "glass." Kingsley responded in the affirmative. Detective Todd then asked Kingsley to turn around for a pat-down search, and Kingsley told the detective that the "glass" was in Kingsley's front sweatshirt pocket. Detective Todd reached in the pocket, retrieved a sunglass-type pouch, and found a clear glass pipe inside the pouch that he recognized as drug paraphernalia. After setting the glass pipe aside, Detective Todd continued his pat-down search, and Kingsley volunteered that he had a "bindle" in his front left pocket. Detective Todd then retrieved a small bag containing white crystals, later identified as methamphetamine, from Kingsley's front left pocket.

After the pat-down search, Kingsley was issued a misdemeanor citation, and subsequently, a criminal complaint was filed against Kingsley charging him with possession of a controlled substance. A preliminary hearing resulted in an information being filed. Kingsley filed a motion to suppress the evidence found as a result of the search of Kingsley. Following a hearing on the motion to suppress, the district court issued a memorandum decision and order denying Kingsley's motion. Kingsley then entered a conditional plea of guilty to possession of a controlled substance (methamphetamine), in violation of Idaho Code § 37-2732(c), reserving his right to appeal the denial of his motion to suppress.[1] Kingsley appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a

---

[1] The misdemeanor charge, possession of paraphernalia, was dismissed as part of the conditional plea agreement.

suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Kingsley argues the district court erred by denying his motion to suppress. Kingsley contends he was unlawfully seized and, consequently, the district court should have suppressed the evidence found as a result of the search of Kingsley.

The Fourth Amendment to the United States Constitution, and its counterpart, article I, section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place and asks if the individual is willing to answer some questions or puts forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*

Warrantless searches are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). If evidence is not seized pursuant to a recognized exception to the warrant requirement, the evidence discovered as a result of the warrantless search must be excluded as the fruit of the poisonous tree. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct. App. 2004)

(citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)). Consent to search does not expunge the taint of unlawful police activity where the events are irrevocably intertwined. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

Fourth Amendment jurisprudence recognizes three types of permissible encounters between police and citizens. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010); *State v. Zapp*, 108 Idaho 723, 726-27, 701 P.2d 671, 674-75 (Ct. App. 1985). The first type is the consensual encounter that does not implicate any Fourth Amendment right because there is no seizure. *State v. Page*, 140 Idaho 841, 843-44, 103 P.3d 454, 456-57 (2004). When the person has been seized, the second type of permissible encounter is the investigatory stop. The investigatory stop (also known as the investigative detention, investigatory seizure, or *Terry* stop) "is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity." *State v. Moran-Soto*, 150 Idaho 175, 181, 244 P.3d 1261, 1267 (Ct. App. 2010) (citing *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003)); *accord Terry*, 392 U.S. at 21. The third type of permissible encounter, which also involves a seizure of the person, is the arrest supported by probable cause. *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009).

The question raised in this appeal is what type of encounter occurred, and if a seizure did occur, whether there was reasonable suspicion to justify the warrantless seizure. Kingsley argues that when he was told to get off the phone, this amounted to an order, detaining or seizing him. Further, Kingsley maintains that the detective lacked reasonable suspicion based on specific, articulable facts to justify an investigatory stop. Accordingly, Kingsley contends the evidence obtained as a result of the unlawful seizure must be suppressed. The State responds that Kingsley's encounter with the detective was consensual. Alternatively, the State maintains that under the totality of the circumstances, the detective had a reasonable suspicion based on specific, articulable facts to seize Kingsley. The district court determined the encounter was consensual, not involving a seizure, based on the brevity of the encounter and the facts of the encounter: the detective was wearing plainclothes; the incident occurred during the daytime; there were other officers present who were not focused on Kingsley; there were few demands or orders by the detective; Kingsley was cooperative in responding to the detective's requests; and Kingsley was not physically restrained.

4

To determine if a seizure occurred, one must ask if, under the totality of the circumstances, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 436. This test, "however, is not whether a person interviewed by the police would find himself psychologically compelled to cooperate with an officer's requests." *United States v. Winston*, 892 F.2d 112, 118 (D.C. Cir. 1989). According to LaFave, "The critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens." 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.4(a) (5th ed. 2012) (footnote omitted). The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), stated:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

We examine the circumstances suggestive of a seizure listed in *Mendenhall*: police presence, display of weapons, physical touching, and language or tone of voice. The record reveals that several law enforcement officers arrived at the probationer's house, including Detective Todd and Post Falls Police Department Detective Williamson who rode together in the lead car. Detective Todd was the only law enforcement officer to focus on Kingsley, although Detective Williamson was with Detective Todd. The other law enforcement officers, including Detective Williamson, were focused on the probationer's house. The record reveals that neither detective drew his weapon on Kingsley. Detective Todd acknowledged that the holstered gun he had on him may have been visible to Kingsley. Detective Williamson, who was near Detective Todd, testified that his badge and gun were visible. It is also apparent from the record that Detective Todd did not initiate physical contact with Kingsley until Kingsley consented to a search by the detective. The last *Mendenhall* circumstance is where an officer uses "language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. It is this circumstance that Kingsley primarily focuses on.

The critical juncture in our analysis begins with whether Detective Todd's statement to Kingsley, telling Kingsley to "get off the phone," is an order or merely a query. An "oral

command" constitutes a seizure when the citizen yields to the command, as the oral command constitutes a show of authority. *State v. Maland*, 140 Idaho 817, 820, 103 P.3d 430, 433 (2004). The Massachusetts Supreme Judicial Court has provided a succinct delineation of a question as compared to an order or command:

> A question, however, is typically not an order. A question is an inquiry; an order is a command. A question requests an answer, while an order demands obedience. To recognize that questions and orders are different creatures is not, of course, to ignore the fact that circumstances of an encounter with police may be sufficiently intimidating that a reasonable person would feel compelled to respond to a police officer's question as he believes the officer would wish him to.

*Commonwealth v. Lopez*, 887 N.E.2d 1065, 1067 (Mass. 2008). The Massachusetts delineation is in line with our analysis in *State v. Linenberger*, 151 Idaho 680, 684, 263 P.3d 145, 149 (Ct. App. 2011): "So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required." Thus, a law enforcement officer can ask a citizen to come to the officer or effectively halt the movement of a pedestrian by asking a question, without seizing the person. *E.g., United States v. Thornton*, 463 F.3d 693, 698 (7th Cir. 2006) (finding no seizure where officers were at a gas station's door and the officers asked two citizens exiting the gas station to step aside and then posed questions to the citizens); *United States v. Broomfield*, 417 F.3d 654, 656 (7th Cir. 2005) (discussing how a police officer could appropriately "bring [a] pedestrian to a halt," and not seize the person, by asking the pedestrian, "Excuse me, we're investigating a robbery, and we'd like to know whether you've seen a black man wearing dark clothing."); *Linenberger*, 151 Idaho at 684, 264 P.3d at 149 (finding no seizure when the defendant was merely asked to step from his boat to the dock); *Lopez*, 887 N.E.2d 1065 (finding no seizure where an officer motioned to a bicyclist to come to the officer and asking the cyclist "Can I speak with you?"). *But see State v. Cardenas*, 143 Idaho 903, 908, 155 P.3d 704, 709 (Ct. App. 2006) (concluding that the defendant was unlawfully seized when a deputy told the defendant he needed to come speak to the officer because, under the circumstances of the case, "the officer's language was inherently coercive such that reasonable people would not believe they were free to go about their business.").

Here, the statement by Detective Todd to Kingsley was distinctively a command. At the preliminary hearing in this case, the prosecutor asked Detective Todd, "And what did you do after seeing the defendant in--standing in the driveway?" Detective Todd responded, "I exited

6

the vehicle. Showed Mr. Kingsley my badge and told him to get off the phone." After the prosecutor then asked what the detective did next, Detective Todd stated, "I asked him to come over to where I was at and asked him if he had any weapons." The instruction to Kingsley to get off the phone was an order that commanded Kingsley to obey and hang up the phone so that Detective Todd could talk to Kingsley.

To place the detective's command in context, contact with Kingsley began with four unmarked police vehicles approaching the probationer's house carrying several plainclothes police officers and a probation officer. Detective Todd, upon exiting his vehicle, displayed his law enforcement badge to Kingsley. Then, Detective Todd directed Kingsley to end the phone call and asked Kingsley to approach him. Certainly, at this point in the overall chain of events, Kingsley was seized. A reasonable person, in seeing the badge and being told to end a phone call, would no longer think that he or she was free to ignore the police presence and go about his or her business.

What separates Kingsley's get-off-the-phone scenario from other scenarios we have analyzed is the command. This distinction, though, is not based on the most literal reading of the test developed from the *Mendenhall* line of cases--that is, whether one would feel free to walk away, 4 LaFave, *supra*, § 9.4(a)--because almost every encounter with police may psychologically compel a reasonable person to cooperate with the law enforcement officer, *Winston*, 892 F.2d at 118. Our decision in *Linenberger*, relied on by the State and by the district court, is in line with the above jurisprudence. In *Linenberger*, we accepted the district court's factual finding that the defendant was asked if he could step out of the boat onto the dock, as opposed to being ordered from the boat. *Linenberger*, 151 Idaho at 684, 263 P.3d at 149. We also noted that the law enforcement officers in that case did not display weapons or physically touch the defendant. *Id.* Accordingly, we concluded that, "Taking into account all of the surrounding circumstances, a reasonable person would have felt free to decline the detective's request and terminate the encounter." *Id.* The same cannot be said in this scenario because the nature of Detective Todd's request to Kingsley is different: instead of asking Kingsley if he would mind ending the phone call, the detective "told him to get off the phone." It is one thing to ask a passing citizen a question, e.g., "Excuse me, we're investigating a robbery, and we'd like to know whether you've seen a black man wearing dark clothing," *Broomfield*, 417 F.3d at 656,

7

and another to walk up to a citizen, show a badge, and tell the citizen to end their cell phone conversation.

Having concluded that Kingsley was seized at the point he was told to get off the phone, we must now determine if this seizure could be justified as an investigatory stop. The determination of whether an investigatory stop is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigatory stop is permissible if it is based upon specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223.

The district court, when analyzing whether Kingsley was seized when Detective Todd asked Kingsley to come to him, found Kingsley was involved in a consensual encounter. The district court concluded, in the alternative, that if Kingsley was seized, the seizure was permissible because it was brief and reasonable and because the detective "had specific articulable facts to justify his 'suspicion' that Kingsley was engaged in criminal activity (out in front of a house of a known drug dealer, on a cell phone) and as such, was able to detain him mere seconds longer and ask if he had any weapons." However, the district court's factual determinations are at odds with the district court's conclusion. According to the district court, "There is no indication that Kingsley acted suspiciously, made furtive movements, or raised a reasonable suspicion that he was armed and/or dangerous. Kingsley was merely present in a location suspected of criminal activity." Moreover, the district court found, "All we have is Kingsley standing on [the probationer's] driveway holding a cell phone with the garage door very slightly open." We accept these findings of fact because they are supported by substantial evidence, but we disagree with the conclusion that reasonable suspicion existed at the moment the seizure occurred, as we freely review the application of constitutional principles to the facts. *See Atkinson*, 128 Idaho at 561, 916 P.2d at 1286

Our first inquiry in determining whether an investigatory stop is reasonable is whether the detective's action was justified at its inception. That is, was the stop based upon specific, articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. Based on the totality of the circumstances at the time the seizure

8

was effected (when Kingsley was told to get off the phone), the facts here do not indicate that Detective Todd had reasonable suspicion that Kingsley had engaged, was engaging, or was about to engage in criminal activity.[2]

We have upheld pat-down searches of individuals during the execution of warrantless probation searches in certain circumstances, as the State aptly cites. However, the reasoning behind our prior holdings is inapplicable to Kingsley's case. For example, in *State v. Crooks*, 150 Idaho 117, 244 P.3d 261 (Ct. App. 2010), law enforcement had just completed a controlled buy when they executed a probation search while awaiting a search warrant. An agent frisked Crooks inside the home. In upholding the frisk, we explained, "Agent Sotka knew that drug transactions were occurring in the apartment--specifically that K. K. had just purchased drugs in the residence, and he had reason to believe Crooks was the supplier of at least some of the drugs sold there." *Id.* at 122, 244 P.3d at 266. In *State v. Dreier*, 139 Idaho 246, 76 P.3d 990 (Ct. App. 2003), law enforcement conducted a probation search of a home for suspected drug manufacturing activity and conducted a pat-down search of Dreier. We concluded that the pat-down search was the result of a lawful frisk based on specific, articulable facts. *Id.* at 250, 76 P.3d at 994. The officer who had conducted the pat-down search had previously executed a search warrant at the same home and had removed several weapons from the home and, "[t]he officer was also aware that Dreier was a frequent visitor to the home and that Dreier was known to carry a firearm." *Id.* at 251, 76 P.3d at 995.

In this case, unlike in *Crooks* and *Dreier*, the officers had no probable cause or reasonable suspicion to believe that there was ongoing drug activity in the house. Although a resident of the house had been involved in drug sales conducted from his automobile in the past, the last of those transactions of which the police had knowledge occurred about four months earlier, and none of the past drug activity was known to have occurred in the house. Thus, the residence where Kingsley was seen was not a known drug house. Therefore, any belief that Kingsley could be a lookout for drug users inside the house was little more than speculation.

---

[2]     Detective Todd, part of a group performing a probation search, knew that he was visiting the home of a known drug dealer; the officers did not have a search warrant or arrest warrant for the probationer. The probationer, though, was known to have provided controlled substances to two confidential informants several months prior.

Nor did Kingsley's conduct give a basis to suspect him of criminality. When Detective Todd arrived at the house, "[a]ll we have is Kingsley standing on [the probationer's] driveway holding a cell phone with the garage door very slightly open," according to the district court. There was not a known nexus between Kingsley and any criminal activity, unlike *Crooks* where there was a known drug transaction that had just occurred and the law enforcement officer had reason to believe that Crooks was a supplier. Moreover, Detective Todd did not even know who Kingsley was upon arriving at the scene. Although Kingsley was standing in the driveway, there is no indication that Kingsley, in any way, posed a threat to the officers, unlike *Dreier* where the officer knew of Dreier and knew that Dreier was known to carry a firearm. Detective Todd testified at the preliminary hearing that, prior to telling Kingsley to get off the phone, Kingsley did not do anything to make Kingsley seem suspicious, Kingsley did not make the detective think Kingsley was a threat to the detective or other persons, and Detective Todd did not see anyone else in front of the residence. Detective Williamson, who was riding in the same vehicle as Detective Todd, testified that there was nothing unusual about the way Kingsley was standing in the driveway: "It was just somebody standing outside talking on a phone." Detective Williamson testified that Kingsley did not try to flee, nor did Detective Williamson think that Kingsley was a threat to himself or anyone else. Accordingly, the factual record here does not indicate that Detective Todd had reasonable suspicion based on specific, articulable facts that Kingsley had engaged, was engaging, or was about to engage in criminal activity simply because Kingsley, the person known not to be the probationer, was standing near a slightly open garage door talking on a cell phone.

Because the seizure cannot be justified as an investigatory stop, evidence discovered on Kingsley as a result of the warrantless search after the seizure must be excluded as fruit of the poisonous tree. *Van Dorne*, 139 Idaho at 963, 88 P.3d at 782 (citing *Wong Sun*, 371 U.S. at 487-88). Kingsley's consent to the pat-down search does not expunge the taint of unlawful police activity where the events are irrevocably intertwined. *Kerley*, 134 Idaho at 874, 11 P.3d at 493.

## III.

## CONCLUSION

We conclude that the district court erred by denying Kingsley's motion to suppress evidence. Kingsley was seized at the point Detective Todd "told him to get off the phone."

10

Based on the record, the seizure was not supported by reasonable suspicion based on specific, articulable facts that Kingsley had engaged, was engaging, or was about to engage in criminal activity. Accordingly, the motion to suppress should have been granted and, hence, the evidence discovered on Kingsley should have been excluded. Because we reverse the district court's order denying Kingsley's motion to suppress, we vacate the judgment of conviction and remand the case for further proceedings consistent with this opinion.

Judge LANSING and Judge MELANSON **CONCUR.**